## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**R&T ROOFING CONTRACTOR, CORP.,**

**Plaintiff,**

**v.**

**THE FUSCO CORPORATION;**
**TRAVELERS CASUALTY AND SURETY**
**COMPANY OF AMERICA,**

**Defendants.**

**CIVIL NO. 15-2955 (GAG)**

## <u>OPINION AND ORDER</u>

This breach of contract suit arises from a major construction project to the Clemente Ruiz Nazario Courthouse and the Federico Degetau Federal Office Building in Hato Rey, Puerto Rico. Plaintiff R&T Roofing Contractor, Corp. ("R&T"), the subcontractor on the project, was retained by The Fusco Corporation ("Fusco"), the prime contractor. (Docket No. 4 at 2.) Fusco was hired by the United States General Services Administration ("GSA") for the project. <u>Id.</u> Travelers Casualty and Surety Company of America ("Travelers") provided insurance in the form of a payment bond on behalf of Fusco. <u>Id.</u> at 3. Fusco hired R&T to perform the roofing work on the project. Construction did not go according to plan. <u>Id.</u> at 2.

When the dust settled, R&T sued Fusco and Travelers for breach of contract invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Docket No. 1, 4.) Fusco subsequently counterclaimed against R&T. (Docket No. 16.) Fusco timely moved for summary judgment on both R&T's breach of contract claim and its own breach of contract claim. (Docket No. 47.) R&T moved to strike certain portions Fusco's motion for summary judgment, and opposed summary judgment. (Docket Nos. 69, 77.) Fusco opposed R&T's motion to strike, and filed a summary judgment reply.

(Docket No. 83.) Presently before the Court are Fusco's motion for summary judgment at Docket No. 47 and R&T's motion to strike at Docket No. 69.[1] The Court addresses the latter, and then turns to the former.

## I. Preliminary Matters and Admissibility Objections[2]

Before trekking through the procedural thicket that has grown from this construction dispute, the Court must first clear away the underbrush of preliminary issues raised by the parties. First, as part of its efforts to sidestep summary judgment, R&T moves to exclude portions of Fusco's motion for summary judgment as inadmissible. (Docket No. 69.) Second, Fusco points to R&T's failure to respond to Fusco's requests for admission, and argues that these facts must be admitted under Rule 36. (Docket No. 83, at 1-4.) Third, Fusco argues that portions of R&T's Opposing Statement of Material Facts at Docket No. 74 are not properly controverted, and must be deemed admitted pursuant to Local Rule 56. (Docket No. 83, 7-8.)

### A. R&T's Motion to Strike at Docket No. 69

R&T moves to deem as inadmissible five exhibits supporting Fusco's motion for summary judgment. (Docket No. 69.) All five exhibits are attachments to Bruce Legen's affidavit (Docket No. 47-5) ("the Legen Affidavit"), which provides the basis for many of the factual assertions in Fusco's motion for summary judgment. The five exhibits R&T seeks to exclude are: the two Proactive Reports (Docket Nos. 47-7; 47-12); the Firestone Report (Docket No. 47-19); the Silktown

---

[1] Although R&T refers to its motion at Docket No. 69 as a motion to strike, the request seeks to exclude evidence as inadmissible. A motion to strike applies to pleadings. Fed. R. Civ. P. 12(f). By contrast, a motion concerning evidence admissibility issues is a motion *in limine*. Thus, the Court will refer to R&T's motion at Docket No. 69 as a motion *in limine*.

[2] As previously mentioned, this case is in federal court on diversity jurisdiction. Puerto Rico substantive law governs the parties' breach of contract claims, but federal procedural law applies to these preliminary, procedural points. See Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

Invoice (Docket No. 47-21); and the GSA Roof Assessment (Docket No. 47-23). R&T raises three categories of admissibility objections to these exhibits: hearsay under Federal Rule of Evidence 801(c), "rule of completeness" under Federal Rule of Evidence 106, and relevance under Federal Rule of Evidence 401. (Docket No. 69.) Since R&T's admissibility arguments lack merit, R&T's motion to strike at Docket No. 69 is **DENIED**.

    *1. Hearsay*

Hearsay is a statement made by the declarant, outside of trial or a hearing, offered by a party into evidence "to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Unless an exception or exclusion applies, hearsay is not admissible. FED. R. EVID. 802. But there are many exceptions and exclusions to the rule against hearsay. One such exception is for records of a regularly conducted activity. FED. R. EVID. 803(6). For this exception to apply, the record must be: (1) made at or near the time by someone with knowledge; (2) kept in the regular course of business; (3) made in the regular practice of that activity; (4) as "shown by the testimony of the custodian or another qualified witness" and (5) free from an indication of a lack of trustworthiness shown by the opponent. FED. R. EVID. 803(6)(A)-(E).

R&T does not directly address Rule 803(6), but essentially raises the same argument in moving to exclude: Fusco's affiant, Mr. Bruce Legen, lacks sufficient personal knowledge of the five exhibits attached to his affidavit, so those exhibits must be excluded as inadmissible hearsay. (Docket No. 69, at 4-5.) However, the Legen Affidavit indicates Mr. Legen has "personal knowledge of the matters set forth" in the affidavit. (Docket No. 47-5, ¶ 1.) As Fusco's Director of Field Operations for the project, Mr. Legen was on-site, observed R&T's performance, and received the five exhibits in his capacity as Fusco's Field Director. Id. at ¶¶ 1-2. R&T has presented no evidence to question the trustworthiness of Mr. Legen's assertion of personal knowledge.

While Mr. Legen may not have drafted these documents, the "qualified witness" requirement does not require original authorship for the record of regularly conduct activity hearsay exception to apply. A qualified witness is simply someone who can explain and be cross-examined concerning the manner in which the records were made and kept. Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1060-61 (1st Cir. 1985) (citations omitted). The Legen Affidavit clearly satisfies that test. Moreover, R&T has marshaled no evidence to suggest a lack of trustworthiness about the five exhibits attached to the Legen Affidavit. Rather, the ordinary business circumstances here suggest trustworthiness. See United States v. Moore, 923 F.2d 910, 915 (1st Cir. 1991) (ordinary business circumstances suggest trustworthiness absent contrary evidence). R&T's hearsay argument fails because the five exhibits attached to the Legen Affidavit qualify as exceptions to hearsay under Rule 803(6).

### 2. *Rule of Completeness*

R&T moves to exclude the two Proactive Reports (Docket Nos. 47-7; 47-12) and the Firestone Report (Docket No. 47-19) for violating the rule of completeness. (Docket No. 69, at 2-3, 5-6.) Federal Rule of Evidence 106 codifies this common law rule.[3] The principle behind the rule is that if a portion of a writing is introduced into evidence, then the opponent may seek to submit the complete version of the writing into evidence. See McCormick on Evid. § 56 (7th ed. 2016).

R&T received the complete versions of these reports in discovery. R&T levies the serious allegation that Fusco withheld certain Proactive Reports (see Docket No. 69, at 3 n.4), but Fusco has

---

[3] Rule 106 reads as follows:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

FED. R. EVID. 106.

squarely disproven this unfounded allegation by presenting evidence of Fusco's discovery disclosures.[4] (Docket No. 83-1.) Thus, if R&T believed the documents were incomplete or taken out of context, it was R&T's duty to include complete versions of the reports in opposition to Fusco's motion for summary judgment. <u>See, e.g.</u>, <u>Santana Morales v. Cotto Vives</u>, No. 02-1107 (PG), 2006 WL 852068, at *3 (D.P.R. Mar. 28, 2006). Rule 106 does not provide a basis to exclude documents properly disclosed during discovery, it simply stands for the commonsense principle that a party is not permitted to take select portions of documents out of context. Thus, R&T's motion to exclude evidence on the basis of the rule of completeness fails.

### 3. Relevance

R&T's third argument in its motion *in limine* is that the Silktown Invoice (Docket No. 47-21) and the GSA Roof Assessment (Docket No. 47-23) lack relevance. (Docket No. 69, at 6-7.) The test for relevant evidence is not a high bar. Evidence is relevant if it has "*any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). These two exhibits are relevant because they tend to show Fusco's damages, and damages are "of consequence" as an element of a breach of contract claim. <u>See, e.g.</u>, <u>Kendra Corp., Inc. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 229-30 (1st Cir. 2003). Therefore, the Silktown Invoice and GSA Roof Assessment satisfy Rule 401's relevance test.

Altogether, R&T has presented no viable reason to exclude any of the exhibits attached to the Legen Affidavit. Thus, the Court deems those exhibits admissible. Accordingly, R&T's motion *in limine* at Docket No. 69 is **DENIED**.

---

[4] The Court proceeds under the assumption that R&T's statement in footnote four is the result of mistake or confusion, not a willful misrepresentation to the Court. <u>See</u> Fed. R. Civ. P. 11(b).

B. <u>Fusco's Requests for Admission</u>

Fusco seeks to deem as admitted its requests for admission due to R&T's failure to answer or object to the requests. (Docket No. 83, at 1-4.) The Federal Rules of Civil Procedure establish the use of requests for admission as a method of conducting discovery in civil cases. "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of [certain] matters." FED. R. CIV. P. 36(a)(1). By operation of this rule, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." FED. R. CIV. P. 36(a)(3).

On August 22, 2016, Fusco served requests for admission on R&T. (Docket No. 47-2, ¶ 1.) The time to respond established by Rule 36 lapsed on September 24, 2016. As of this date, R&T has not responded to Fusco's requests for admission. (Docket Nos. 47-2, ¶ 4; 74, ¶ 4.)

Rather than dispute their own failure to respond to Fusco's requests for admission, R&T argues that the Fusco's unanswered requests should not be deemed admitted because Fusco has not properly certified the discovery dispute under Local Rule 26(b). (Docket No. 74, ¶¶ 1-4.) Local Rule 26(b) provides that "[a] judge shall not consider any discovery motion that is not accompanied by a certification that the moving party has made a reasonable and good-faith effort to reach an agreement with opposing counsel" on the disputed matters. L. Cv. R. 26(b). If such efforts prove unsuccessful, "any dispute not resolved shall be presented to the judge by motion." <u>Id.</u>

Here, there is no dispute: R&T never responded to Fusco's requests for admission. (Docket No. 47-2, ¶ 4; Docket No. 74, ¶ 4.) Given that agreement, Rule 36(a)(3)'s application is automatic: the subject of Fusco's requests for admission are admitted, unless R&T timely serves a "written answer or objection" on the matter. <u>See</u> FED. R. CIV. P. 36(a)(3); <u>see also</u> <u>An-Port, Inc. v. MBR Indus., Inc.</u>, 772 F. Supp. 1301 (D.P.R. 1991) (a nonresponsive party "defaulted on its duty to

answer" when the time to respond lapsed, so the facts at issue were deemed admitted for summary judgment consideration). On this record, the Court's failure to deem as admitted Fusco's requests for admission would likely constitute reversible error. See Puerto Rico Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 134 (1st Cir. 2010) (reversing a district court's denial of a motion to deem as admitted evasive responses to a party's requests for admission for lacking the requisite certification under Local Rule 26(b)). Accordingly, Fusco's thirteen unanswered requests for admission are deemed admitted. (Docket No. 47-3, ¶¶ 1-13.)

### C. Local Rule 56

Finally, the Court turns to Fusco's contention that R&T failed to comply with Local Rule 56. Local Rule 56(c) requires that a party opposing summary judgment shall "admit, deny or qualify" the opponent's statement of facts. L. Cv. R. 56(c). "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." Id. Failure to comply with this rule carries heavy consequences. A party's properly supported facts "shall be deemed admitted unless properly controverted" by the opponent, and the Court "may disregard any statement of fact not supported by a specific citation" to the record. L. Cv. R. 56(e).

R&T filed an opposing statement of material facts as contemplated by Local Rule 56. (Docket No. 74.) However, many of R&T's statements fail to comply with Local Rule 56(c). Paragraphs 1-5 are simply R&T's argument regarding Fusco's requests for admissions. Fusco's requests for admissions (Docket No. 47-3) are deemed admitted. See infra I.B. Paragraphs 28-34 contain no record citation, and are thus deemed admitted. Finally, in opposition to Fusco's statement of undisputed material facts regarding damages (see Docket No. 47-2, ¶¶ 38-51), R&T responded with a "blanket denial" without evidentiary support, and argued "it was Fusco who caused itself self inflicted wounds for failure to properly coordinate the contractors." (Docket No. 74, at 12.) On this

critical element, R&T apparently decided to waive the white flag rather than support its position or contest Fusco's position with admissible evidence. Fusco's uncontested facts presented in paragraphs 38-51 are deemed admitted. See L. Cv. R. 56(c), (e); see also Perez-Maspons v. Stewart Title P.R., Inc., 208 F. Supp. 3d 401, 408-09 (D.P.R. 2016). To sum up, Fusco's statement of undisputed material facts at paragraphs 28-34 and 38-51 are deemed admitted under Local Rule 56.

## II. Relevant Factual and Procedural Background

The Court states the facts in the light most favorable to R&T, the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Unless otherwise noted, the facts are not disputed by the parties for summary judgment purposes. See L. Cv. R. 56(e) (properly supported facts are deemed admitted for summary judgment, unless properly controverted).

On May 6, 2010, Fusco entered into a prime contract with the GSA for "Bridging Design Services for the Nazario United States Courthouse and the Degetau Federal Office Building" in Hato Rey, Puerto Rico ("the Project"). (Defendants' Statement of Uncontested Material Facts, Docket No. 47-2, ¶ 6) (hereinafter "DSUMF"). Travelers issued a payment bond on Fusco's behalf. (DSUMF ¶ 7; Plaintiff's Opposing Statement of Material Facts, Docket No. 74, ¶ 7) (hereinafter "PSUMF"). Fusco was the principal on the policy, GSA was the obligee, and Travers was the surety. (DSUMF ¶ 7; PSUMF ¶ 7.) The Project required significant roofing work, including the removal of the existing roof on the Courthouse and the Federal Office Building and installation of a new roofing system on both buildings. (DSUMF ¶ 8; PSUMF ¶ 8.)

### A. The Subcontract

On August 27, 2012, Fusco entered into a Subcontract with R&T to perform the roofing work for the Project. (DSUMF ¶ 9; PSUMF ¶ 9; see also Docket No. 47-4, the "Subcontract".) The Subcontract tasked R&T with "all coordination, manufacturing, fabrication, labor, materials, tools,

equipment and appurtenances of every kind for the complete execution to furnish and install the Roofing and related work." (DSUMF ¶ 10; PSUMF ¶ 10.) The original amount of the Subcontract was $977,500.00, but after several changes, the final amount of the Subcontract was $1,135.429.00. (DSUMF ¶ 9; PSUMF ¶ 9.)

The Subcontract contains a number of key provisions relating to notice, termination for default, and appeal. Article 7(a) establishes a seven-day notice requirement prior to Fusco's termination of R&T for inability to perform. (Docket No. 47-4, at 11.) Article 7(b) sets forth a non-exclusive list of grounds for R&T's termination for default, including "failure to provide sufficiently trained Workmen or materials of the proper quality" and "failure to commence or carry forward [R&T's] Work in accordance with the Project Schedule." Id. Article 11(b) provides that, after receiving a notice of termination for default, R&T has ten days to appeal the termination decision in the United States District Court for the District of Puerto Rico. Id. at 13. In the event that a default termination is deemed wrongful, the contract provides that the termination shall be "converted into a termination for convenience" as detailed in Article 8 of the Subcontract. Id. at 11-12.

The Subcontract also contains a number of damages and indemnification provisions. Article 7(c) provides for damages in the event of R&T's termination by default. Id. at 11. Article 9(a) establishes R&T's duty to defend and indemnify Fusco for "all claims, losses, costs, damages, [and] expenses . . . relating to, arising out of, or claims to related to . . . performance of the Subcontract or the Work." Id. at 12. Article 16(e) limits R&T's recovery in the event of the termination of the prime contact to an equitable portion of the amount actually paid to Fusco by the GSA with respect to the work performed by R&T. Id. at 15.

B. <u>Performance, Termination, and Damages</u>

During the course of R&T's performance of the roofing work for the Project, two separate third parties inspected and reviewed R&T's work. Proactive Roof Solutions ("Proactive") was retained by Fusco to provide quality control and record observations of R&T's performance. (DSUMF ¶ 11; PSUMF ¶ 11.) The second company—Jacobs Engineering Group Inc. ("Jacobs")—was the GSA's construction manager; Jacobs also reviewed and monitored R&T's roofing work. (DSUMF ¶ 13; PSUMF ¶ 13.) Both Proactive and Jacobs drafted and submitted reports about R&T's performance. R&T disputes the substance and significance of these assessments, but not the fact of their existence. (DSUMF ¶¶ 12, 15-24; PSUMF ¶¶ 12, 15-24.)

The parties dispute the accuracy of the Proactive reports. Proactive drafted numerous field reports of R&T's roofing work on the Project. (<u>See</u> Docket No. 47-7, at 2-8.) The field reports noted that R&T used expired roofing material, lacked critical materials to conduct the roofing work, used low quality caulking material, suspended roofing work without notice, and stored waste on the roof. (DSUMF ¶ 12; <u>see also</u> Docket No. 47-7, at 3-4, 6-8.) R&T argues that the use of expired materials was permitted, and that the materials were expired because of construction delays caused by Fusco. (PSUMF ¶ 12.) The field report from April 4, 2014 indicates that expired materials were used at some point, but then after the materials were tested and failed, R&T was instructed "to stop using the materials." (Docket No. 47-7, at 7.)

By operation of R&T's failure to respond to Fusco's requests for admissions, it is undisputed that Jacobs identified deficiencies with R&T's roofing work on the Project and requested correction of those defects. (DSUMF ¶ 14; <u>see also</u> Docket No. 47-3 ¶ 10.) It is also undisputed that leaking occurred during R&T's roofing construction. (DSUMF ¶ 25; Docket No. 47-3, ¶ 11.) R&T disputes the significance of the Jacobs reports. The deficiencies noted by Jacobs were in the form of "punch

lists." (PSUMF ¶ 15.) R&T explains that punch lists are an industry term used to describe minor problems in need of correction. (Docket No. 74-1, ¶ 20.) In R&T's view, the problems of ponded water, improper roof sealing, and uncovered materials were either minor, or promptly corrected, or both. (PSUMF ¶¶ 15-19.) Nevertheless, it is undisputed that Fusco informed R&T, on multiple occasions prior to termination, that it was unsatisfied with the progress and quality of R&T's work. (DSUMF ¶ 30; PSUMF ¶ 30; see also Docket No. 47-3, ¶ 12.)

On November 18, 2014, Fusco sent a letter to R&T notifying that it intended to terminate R&T for default within seven days pursuant to the terms of their Subcontract. (DSUMF ¶ 28; PSDUMF ¶ 28; see also Docket No. 47-3, ¶ 1.) Fusco's November 18 notice set forth the grounds for R&T's termination by default: (1) failure to provided sufficient trained workers; (2) failure to provide assurances; (3) failure to deliver necessary safety support systems for the roofing work; and (4) failure to arrange for necessary materials for the Project. (DSUMF ¶ 28.) R&T did not respond to Fusco's notice of default. (DSUMF ¶ 31.) The last day R&T performed work on the Project was November 24, 2014. (Docket No. 47-3, ¶ 2.) On November 25, 2014, seven days after providing notice, Fusco terminated R&T for default. (DSUMF ¶ 31; see also Docket No. 47-3, ¶ 5.) R&T did not provide a ten-day notice of its intent to appeal the termination to the United States District Court for the District of Puerto Rico, as provided under Article 11(b) of the Subcontract. (DSUMF ¶ 37; see also Docket No. 47-3, ¶¶ 6-7.)

Prior to R&T's termination, Fusco paid R&T a total of $415,254.09 pursuant to the Subcontract. (DSUMF ¶ 43; see also Docket No. 47-3, ¶ 13.) Following R&T's termination, Fusco retained Silktown Roofing, Inc. ("Silktown") to repair and complete R&T's work. (DSUMF ¶ 40.) On December 9, 2014, Fusco, Silktown, and Firestone Building Products (the manufacturer of the roofing materials), surveyed the site to identify the status of R&T's work and any defects. (DSUMF

¶ 41.)  Firestone determined that water damage had affected sixty percent of the roofing system installed by R&T, and that water damaged items and improperly stored materials had to be removed from the site and replaced.  (DSUMF ¶ 42.)  GSA subsequently determined that R&T's roofing work required complete removal and replacement.  (DSUMF ¶ 44.)  As a result, Fusco paid Silktown $94,913.90 to assess and repair R&T's roofing work.  (DSUMF ¶ 45.)

After Fusco terminated R&T, but before Silktown corrected and completed the roofing project, GSA terminated Fusco for default on April 1, 2015.  (DSUMF ¶ 47.)  On March 4, 2015, prior to Fusco's termination, GSA sent Fusco a letter noting deficiencies in the roofing work done by R&T.  (DSUMF ¶ 48.)  In total, GSA assessed $1,332,500.00 in recoupment costs to Fusco for the total amount it cost GSA to complete the scope of the roofing work.  (DSUMF ¶ 50.)  R&T has not reimbursed Fusco for any costs related to the Subcontract.  (DSUMF ¶ 51.)

C.  <u>Procedural History</u>

On November 25, 2015, R&T brought this construction dispute into federal court.  (Docket No. 1.)  After R&T amended its complaint, Fusco answered and filed a counterclaim against R&T.  (Docket Nos. 4, 16.)  Together, Fusco and Travelers moved to dismiss the complaint and moved to stay the case pending mediation.  (Docket Nos. 17, 18.)  The Court ordered R&T to show cause as to why mediation was not warranted, and when R&T failed to respond, the case was stayed and mediation was ordered.  (Docket Nos. 24, 25.)

Mediation proved unsuccessful, and the parties returned to federal court.  On June 29, 2016, the parties held an Initial Scheduling Conference where discovery and dispositive motion deadlines were set.  (Docket Nos. 28-30.)  Of particular relevance here, the dispositive motion deadline was set for November 1, 2016.  (Docket No. 36.)

Fast forward to November 1, 2016, and Fusco moved for summary judgment. (Docket No. 47.) R&T did not. Instead, on the same day, R&T requested leave to file a second amended complaint. (Docket No. 52.) R&T did not timely oppose Fusco's summary judgment motion, so on November 21, 2016, Fusco moved to deem its motion for summary judgment as unopposed. (Docket No. 55.) At that point, R&T moved for a three-month extension of time to oppose summary judgment. (Docket No. 57.) The Court denied R&T's three-month extension, denied Fusco's motion to deem summary judgment as unopposed, and instead granted R&T until December 16, 2016 to oppose summary judgment. (Docket No. 59.)

Given the "late stage of proceedings" and the parties' dispositive motion posturing, the Court denied R&T's request to file a second amended complaint. (Docket No. 60.) R&T then filed an emergency motion for reconsideration, which this Court denied. See R&T Roofing Contractor, Corp. v. The Fusco Corp., No. 15-2955 (GAG), 2016 WL 7187315 (D.P.R. Dec. 9, 2016). At that time, the Court issued R&T a warning:

> Throughout this litigation, R&T missed numerous court deadlines without explanation. Perhaps even worse, R&T repeatedly waited for the deadline to lapse before seeking any extension or other relief. This strategy is plainly ineffective.

Id. at *3. Then, R&T moved *in limine* to deem certain evidence as inadmissible (on December 16, 2016), filed an opposing statement of material facts (on December 19, 2016, per Court extension), and filed a summary judgment opposition (on December 22, 2016, without an extension). (Docket Nos. 69, 74, 77.) Although R&T's summary judgment opposition was untimely, the Court did not strike the untimely filing. (Docket No. 87.) Fusco timely replied. (Docket No. 83.)

On May 24, 2017, R&T moved for summary judgment. (Docket No. 88.) Since R&T's dispositive motion was filed over six months after the dispositive motion deadline lapsed, Fusco moved to strike. (Docket No. 89.) The Court ordered R&T to show cause, by June 16, 2017, as to

why its motion for summary judgment should not be stricken from the record. (Docket No. 90.) Four days after the show cause deadline lapsed, R&T belatedly responded. (Docket No. 91.) The Court granted Fusco's motion to strike R&T's untimely summary judgment motion. See R&T Roofing Contractor, Corp. v. The Fusco Corp., No. 15-2955 (GAG), 2017 WL 2778030 (D.P.R. June 27, 2017). R&T moved for reconsideration, which the Court denied. (Docket Nos. 96, 98.)

### III. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted). The movant bears the initial burden of demonstrating the lack of evidence to support the nonmovant's case. Celotex, 477 U.S. at 325. Then, the burden shifts to the nonmovant, who must establish at least one genuine and material issue of fact. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that the material cited by the movant "do[es] not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. Liberty Lobby, 477 U.S. at 248.

The Court views the evidence in the light most favorable to the nonmovant, resolving all reasonable inferences in that party's favor, without making any credibility determinations or weighing the evidence. Id. However, summary judgment is appropriate when the nonmovant's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (citation omitted).

## IV. Discussion

The parties are diverse and the matter in controversy exceeds the required amount, so this Court has diversity jurisdiction to hear the parties' contract dispute. See 28 U.S.C. § 1332(a). State substantive law supplies the rules of decision for a federal court sitting in diversity jurisdiction, so Puerto Rico law applies here. Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

Under Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages. P.R. LAWS ANN. tit. 31, § 3018 ("Those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever at in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."); Mega Mega Holdings, Inc. v. Aerco Broad. Corp., 852 F. Supp. 2d 189, 199-200 (D.P.R. 2012) (citations omitted); Unisys P.R., Inc. v. Ramallo Bros Printing, Inc., 128 P.R. Dec. 842, P.R. Offic. Trans., 1991 WL 735351 (P.R. 1991). It is undisputed that R&T and Fusco entered into a valid contract under Puerto Rico law. (DSUMF ¶ 9; PSUMF ¶ 9.) See P.R. LAWS ANN. tit. 31, § 3391 (three elements required for a valid contract: (1) consent of the contracting parties; (2) a definite object which may be the subject of contract; and (3) cause for the obligation which may be established); see also Kmart Corp. v. Dow Roofing Sys., LLC, No. 12-1679, 2013 WL 6229378, at *2 (discussing the elements of valid contract formation).

The disputes here—both R&T's claim and Fusco's counterclaim—relate to the second and third elements of breach of contract.

    A.  R&T's Breach of Contract Claim

    Fusco seeks summary judgment on R&T's breach of contract claim.  Fusco argues that R&T failed to timely appeal Fusco's notice of termination by default, which bars R&T from raising a breach of contract claim now.  (Docket No. 47-1, at 9-15.)  R&T opposes Fusco's motion, arguing that summary judgment is unwarranted because genuinely disputed facts suggest Fusco breached the Subcontract first.  (Docket No. 77, at 10-17.)  Based on the terms of the Subcontract, R&T cannot prevail on its breach of contract claim.  Therefore, Fusco is entitled to judgment as a matter of law on R&T's claim for breach of contract.

    The undisputed factual record reveals that Fusco properly terminated R&T for default under the terms of the Subcontract.  Article 7(a) of the Subcontract establishes a seven-day notice requirement prior to termination for default.  (Docket No. 47-4, at 11.)  Fusco provided the required notice to R&T on November 18, 2014.  (Docket No. 47-3, ¶ 12.)  Article 7(b) details the appropriate grounds for termination by default, including failure to provide enough trained workers and failing to meet the Project schedule.  (Docket No. 47-4, at 11.)  In the November 18, 2014 default notice and November 25, 2014 termination notice, Fusco explained R&T's failure to perform: R&T failed to provide a sufficient number of trained workers, failed to adhere to the Project schedule, and failed to give adequate performance assurances.  (Docket No. 47-3, at ¶¶ 5, 12.)

    The Subcontract explicitly contemplated when and how R&T should contest a termination for default.  Under Article 11(b), following termination for default, R&T had ten days to appeal the termination decision in the United States District Court for the District of Puerto Rico.  (Docket No. 47-4, at 13.)  If R&T failed to appeal within ten days, Fusco's termination for default would be "a

final decision" which "shall be binding." Id. Ten days came and went without appeal. In fact, R&T waited over a year, until November 25, 2015, to file its breach of contract complaint in federal court.

Based on the terms of the Subcontract, R&T was contractually bound to deliver Fusco "notice of its intention to appeal such decision" to this Court within ten days of a termination for default. When parties enter a valid and enforceable contract, the parties are bound by the contract's terms and consequences of their agreement. E.g., Vasquez-Borges v. Nupress of Miami, Inc., No. 13-1717 (CVR), 2016 WL 1627612, at *5 (D.P.R. Apr. 25, 2016). The contract thus becomes the law between the parties, and its terms must be complied with. P.R. LAWS ANN. tit., 31 § 3375; see Constructora Bauzá v. García López, 129 P.R. Dec. 579, 593 (P.R. 1991). Despite this contractual obligation, R&T undisputedly did not provide a ten-day notice of its intent to appeal the termination to this Court. (DSUMF ¶ 37; see also Docket No. 47-3, ¶¶ 6-7.)

R&T does not dispute its failure to timely appeal under Article 11(b). Rather, R&T did not intend to sue within the ten days because it was "hopin[g] that Fusco would pay the money owed to R&T." (PSUMF ¶ 35.) R&T's hopes provide no relief from its contractual obligations. R&T also argues Fusco's termination by default was unjustified, or even fraudulent, and allege unlawful partial payments from Fusco. (Docket No. 77, 12-17.) The factual record does not support R&T's position. And even if R&T had supported this argument with facts in the record, R&T still has not explained why or how Fusco's allegedly unjustified termination by default would have waived or nullified R&T's obligation under Article 11(b)—i.e., to appeal an unjustified termination within ten days in this Court. For the same reason, R&T's claim against Travelers fails as well. United Structures of Am. Inc. v. G.R.G. Eng., S.E., 9 F.3d 996, 999-1000 (1st Cir. 1993) (a surety may raise a contractor's defense, effectively standing in the shoes of the contractor).

As a result of its failure to timely appeal, the Subcontract dictates that R&T cannot now challenge the validity of the termination by Fusco. See, e.g., Fed. Ins. Co. v. Empresas Sabaer, Inc., No. 12-1113 (SCC), 2014 WL 7246756, at *3-4 (D.P.R. Dec. 17, 2014) (granting summary judgment for a contractor who provided adequate notice of termination by default to a subcontractor, and where subcontractor failed to timely arbitrate any appeal of the termination by default). Without a means to challenge the termination, Fusco's termination decision is "binding" and R&T cannot establish breach. Since there is no genuine dispute of material fact as to the element of breach, R&T cannot prevail on its claim, and Fusco is entitled to judgment as a matter of law.

### B. Fusco's Breach of Contract Counterclaim

Fusco also moves for summary judgment on its breach of contract counterclaim against R&T. Fusco argues that R&T's deficient performance caused Fusco to incur substantial costs, in the amount of $825,797.21. In response, R&T argues that genuinely disputed issues exist as to whether R&T's performance was defective, whether any defective performance constituted breach, whether Fusco engaged in contractor interference, and whether Travelers breached its duty to pay R&T "promptly" regardless of Fusco's counterclaim. (Docket No. 77.) However, R&T does not raise any factual dispute or any legal argument as to Fusco's measure of damages. (See Docket Nos. 74; 77.) For the reasons discussed below, R&T has failed to present a genuine issue of fact as to Fusco's breach of contract claim, and Fusco's undisputed measure of damages inevitably follows from R&T's breach. Therefore, Fusco is entitled to judgment as a matter of law.

In the Subcontract, R&T agreed to provide "all coordination, manufacturing, fabrication, labor, materials, tools, equipment and appurtenances of every kind for the complete execution to furnish and install the Roofing and related work." (DSUMF ¶ 10; PSUMF ¶ 10.) In carrying out these duties, R&T's "strict compliance with the Subcontract" was required, which included

providing "skilled supervision," "monitoring daily production quality," and meeting the Subcontract's schedule "in a prompt and diligent manner." (Docket No. 47-4.)

The undisputed record shows that R&T's work was defective. Leaks occurred during R&T's roofing construction. (DSUMF ¶ 25; Docket No. 47-3, ¶ 11.) R&T used expired materials on the Project, and R&T's work resulted in ponded water and improperly sealed roofing. (DSUMF ¶¶ 15-19; PSUMF ¶¶ 15-19; Docket No. 47-7, at 7.) On other instances, R&T did not have enough workers to perform, which led to work cancellations and delays. (Docket No. 47-5, ¶ 13.) To be sure, the record suggests that construction on the Project encountered numerous delays and complications—so much so that the GSA eventually terminated Fusco for default—but R&T has not presented evidence that any delays outside of R&T's control wholly excuse R&T for deficiencies in matters within its control. R&T was obligated to work "in strict compliance with the Subcontract" and the undisputed record shows that R&T did not satisfy this contractual standard.

Multiple parties documented R&T's deficient performance. Proactive's field reports show R&T used of expired materials, which were tested and failed, and R&T was instructed "to stop using the materials." (Docket No. 47-7, at 7.) Jacobs identified deficiencies with R&T's roofing work on the Project and requested correction of those defects on numerous occasions. (DSUMF ¶ 14.) Fusco notified R&T that it was unsatisfied with R&T's progress and quality of work on multiple occasions prior to termination. (Docket No. 47-3, ¶ 12.) Following Fusco's termination of R&T for default, Firestone determined that water damage had affected sixty percent of the newly installed roofing system. (DSUMF ¶ 42.) Later, the GSA determined that R&T's roofing work required complete removal and replacement. (DSUMF ¶ 44.)

R&T relies on Mr. Gilberto Rodriguez-Cosme's Affidavit[5] (the "Rodriguez-Cosme Affidavit") and the GSA's termination letter to Fusco in an attempt to dispute the defectiveness of R&T's performance. (Docket Nos. 69-2, 78-1.) Mr. Rodriguez-Cosme is the President of R&T. Viewed in the light most favorable to R&T, the Rodriguez-Cosme Affidavit—which seems to contain more legal conclusions and statements of opinion than actual statements of fact—only raises a dispute about the significance of R&T's defective performance, while confirming the deficiencies in R&T's work, as reported by Proactive, Jacobs, the GSA, Firestone, and Fusco. R&T's reliance on the GSA's termination of Fusco is no help either. The fact that the GSA terminated Fusco for default has no bearing on whether R&T breached the Subcontract. Accordingly, the Rodriguez-Cosme Affidavit does not establish a genuinely disputed material fact sufficient to ward off summary judgment as to R&T's breach of the Subcontract.

As a result of R&T's defective work, Fusco terminated R&T for default. Article 7(c) of the Subcontract entitles Fusco to damages in the event of termination for default. Article 7(c) provides:

> After a default termination, no monies shall be due and owing to [R&T] until (i) the scope of the Work has been completed and [R&T] has paid [Fusco] for all costs that [Fusco] incurred in completing the Worth (including a fee of 10%) and (ii) a determination made as to the extent of damages suffered by [Fusco] as a result thereof and [R&T] has paid [Fusco] any and all such damages incurred by [Fusco].

(Docket No. 47-4, at 11.) Additionally, Article 9(a) establishes R&T's duty to defend and indemnify Fusco for claims, losses, or damages arising from R&T's breach. Article 9(a) provides:

> To the maximum extent permitted by law, [R&T] shall indemnify, defend and hold harmless [Fusco] . . . from and against any and all claims, losses, costs, damages, expenses (including but not limited to defense costs and attorneys' fees . . .) fines, penalties and causes of action . . . relating to, arising out of . . . or occurring in connection with performance of the Subcontract or the Work . . . .

---

[5] The Court notes that R&T originally submitted the Rodriguez-Cosme Affidavit as an unsigned draft. (Docket No. 74-1.) After the deadline to oppose summary judgment elapsed, R&T submitted a signed version of the affidavit. (Docket No. 78.)

Id. at 12. The Subcontract is clear. If R&T is terminated for default, then R&T is liable for any damages "relating to" or "arising out of" R&T's performance. This reading is entirely consistent with Puerto Rico Law. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. LAWS ANN. tit., 31 § 3471; see also Exec. Leasing Corp. v. Banco Popular de P.R., 48 F.3d 66, 69 (1st Cir. 1995) (recognizing the same).

The final element of breach of contract under Puerto Rico law is damages. P.R. LAWS ANN. tit. 31, § 3018 ("Those who in fulfilling their obligations are guilty of fraud, negligence or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby"). Notably, R&T makes no effort to raise a factual dispute as to damages. Instead, R&T only makes a "blanket denial" and alleges that "it was Fusco who caused itself self inflicted wounds for failure to properly coordinate the contractors." (Docket No. 74, at 12.) Neither R&T's blanket denial nor the allegation of Fusco's responsibility is sufficient to establish a genuine dispute of fact as to the amount of Fusco's damages.

Accordingly, a damages hearing is not required. See Empresas Sabaer, 2014 WL 7246756, at *4. The following damages are undisputed: (1) Fusco paid R&T $415,254.09 for work that was rendered unusable; (2) Fusco paid Silktown $94,913.90 to correct R&T's unusable work; (3) Fusco is entitled to a 10% overhead fee for money Fusco paid Silktown, amounting to $9,491.39; (4) Fusco paid reprocurement costs to the GSA in the amount of $197,071.00; (5) Fusco's legal fees in the amount of $109,066.80.[6] The total amount of damages incurred by Fusco is $825,797.18. Since

---

[6] These legal fees are current as of Fusco's motion for summary judgment. Counsel may update this amount upon entry this Opinion and Order.

there is no genuine dispute of material fact as to Fusco's breach of contract counterclaim against R&T, Fusco is entitled to judgment in the amount of $825,797.18 as a matter of law.

## V. Conclusion

For the reasons set forth above, Plaintiffs' motion *in limine* at Docket No. 69 is **DENIED**. Defendants' motion for summary judgment at Docket No. 47 as to Plaintiff's breach of contract claim is **GRANTED**. Plaintiffs' breach of contract claim is **DISMISSED with prejudice**. Defendants' motion for summary judgment at Docket No. 47 as to Defendant's breach of contract counterclaim is **GRANTED**. Fusco is entitled to damages in the amount of $825,797.18. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 22nd day of August, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge